**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CAMARA SHACKLEFORD,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. CJC-26-0167** |
| **CONSUMER LEGAL GROUP, P.C., *et al.*,** | * | |
| **Defendants.** | * | |

**MEMORANDUM OPINION**

There are several pending motions and one notice in this case: (1) a Motion to Dismiss, filed by Defendants Consumer Legal Group, P.C. ("Consumer Legal Group"), Aryeh Weber, Jack Gross, and Jason Rebhun (the "Individual Defendants") (collectively, "Defendants"), ECF No. 24; (2) a Cross-Motion for Summary Judgment, filed by Plaintiff, ECF No. 33; (3) a Motion for Judicial Notice, filed by Plaintiff, ECF No. 34; (4) a Notice of Supplemental Authority and Correction of Record, filed by Plaintiff, ECF No. 39; (5) a Motion for Sanctions, filed by Plaintiff, ECF No. 42; and (6) an Emergency Motion for Expedited Hearing and Ruling on Motion for Rule 11 Sanctions, filed by Plaintiff, ECF No. 45. All filings have been briefed. No hearing is necessary. Loc. R. 105.6 (D. Md. 2026).

This Memorandum Opinion addresses all pending Motions and the Notice. For the reasons stated below, Defendants' Motion to Dismiss is GRANTED IN PART. Plaintiff's Cross-Motion for Summary Judgment is DENIED as premature; Plaintiff's Motion for Judicial Notice is DENIED; Plaintiff's Notice of Supplemental Authority and Correction of Record, to the extent it seeks any relief, is DENIED; Plaintiff's Motion for Sanctions is DENIED; and Plaintiff's

Emergency Motion for Expedited Hearing and Ruling on Motion for Rule 11 Sanctions is DENIED AS MOOT.

## FACTUAL BACKGROUND[1]

Plaintiff Camara Shackleford has filed suit against Consumer Legal Group and the Individual Defendants alleging breach of contract, a violation of the Federal Trade Commission Act ("FTC Act"), civil fraud[2], and a violation of the "Deceptive Practices Act."[3] Plaintiff alleges that on or about June 7, 2023, a representative of Consumer Legal Group called Plaintiff and offered its debt invalidation services. ECF No. 1. ¶ 1. Plaintiff alleges that the representative explained to Plaintiff that she could enroll 14 debts and that Consumer Legal Group would dispute those debts on Plaintiff's behalf. ECF No. ¶ 1. In exchange for the debt invalidation services, Plaintiff was required to pay fees upfront to Consumer Legal Group. ECF No. 1 ¶ 8. If any debt remained after two years, Plaintiff would be entitled to a refund. ECF No. 1 ¶ 1. Plaintiff signed a contract with Consumer Legal Group that same day and paid fees from June 12, 2023, through May 30, 2025, totaling $13,451.28. ECF No. 1 at 4, § II.B.3; ¶ 9.

Plaintiff alleges that on or about October 10, 2023, she received a call from Consumer Legal Group, at which time a representative requested Plaintiff's signature and initials on a contract that the representative claimed had been emailed to Plaintiff a month earlier, on September

[1] The facts are described in the light most favorable to Plaintiff as the non-moving party.

[2] Plaintiff has combined her allegations relating to civil fraud and the "Deceptive Practices Act" under a single header, though they represent two distinct claims. Defendants address the claims separately in their briefing, and I do the same throughout this Opinion.

[3] In the Complaint, Plaintiff sets out specific factual allegations relating to each claim. For narrative ease, the facts set forth here are not organized by claim but rather chronologically, or where appropriate, by subject matter.

15. ECF No. 1 ¶¶ 3–4. Plaintiff alleges that the representative deceived Plaintiff into signing the contract by failing to make her aware that the contract had "major changes" from the previous contract, "in an attempt to dissolve the original contract." ECF No. 1. ¶ 4. Plaintiff alleges that the contracts with Consumer Legal Group provide that if Plaintiff were to be sued, Consumer Legal Group would provide Plaintiff representation. ECF No. 1 ¶ 5. Plaintiff alleges that she was sued several times between May 2024 and 2025 yet Consumer Legal Group never provided her with legal representation, resulting in adverse judgments with interest and court costs. ECF No. 1 ¶ 5–6.

Plaintiff alleges that on November 5, 2025, Consumer Legal Group advised her that the debt in Plaintiff's 14 accounts could not be invalidated. ECF No. 1 ¶¶ 15, 27[4]. Plaintiff alleges that Consumer Legal Group, together with Defendants Gross and Rebhun, "intentionally failed to provide [her] a refund" and that Defendant Weber defrauded her into believing that she would receive debt resolution services in her favor. ECF No. 1 ¶¶ 15, 22.

Plaintiff's Complaint also raises several factual allegations related to the operation of Consumer Legal Group's business. Plaintiff alleges that Consumer Legal Group utilized software that automated the processes to dispute customers' debts and worked with marketing companies to solicit customers. ECF No. 1 ¶ 10. Plaintiff alleges that Consumer Legal Group paid marketing companies a percentage of fees collected from customers who enrolled in Consumer Legal Group's debt invalidation services, and that this arrangement was "illegal [in] nature." ECF No. 1 ¶¶ 10–13.

---

[4] The Complaint contains a paragraph numbering error with paragraphs 1–16 followed by paragraphs 12–24. To avoid confusion, the paragraphs have been renumbered as paragraphs 1–29. Accordingly, paragraph 27 corresponds with paragraph 22 of the Complaint as filed.

Plaintiff also alleges, at length, the relationship between Consumer Legal Group and another group offering a similar service, "Litigation Practice Group" ("LPG"). ECF No. 1 ¶¶15–29.

Plaintiff alleges that LPG is run by Tony Diab and that Consumer Legal Group operates as an alter ego of LPG. ECF No. 1 ¶ 15, 26–27. Plaintiff alleges LPG trained Defendant Rebhun and others on how to handle "no lawsuit assignment and tracking," transferred some of its client files to Consumer Legal Group, and gave Consumer Legal Group access to LPG's attorney network. ECF No. 1 ¶¶ 15, 17. Plaintiff alleges that LPG and Tony Diab were engaged in a "fraudulent scheme" that "divert[ed] millions of dollars to third parties" and that Diab transferred LPG's business to "non-debtor entities" like Consumer Legal Group. ECF No. 1 ¶¶ 20, 26.

Plaintiff alleges that Consumer Legal Group engaged in "intentional fraudulent business practices, false claims of debt invalidation services, and misrepresentation." ECF No. 1 ¶ 29. As a result, Plaintiff claims that she suffered "reduced income earnings, pain and suffering and loss of economic stability." ECF No. 1 ¶ 29. Plaintiff also alleges that she suffered "a major credit score loss, fell behind on bills, [and] received judgments and liens on her property." ECF No. 1 ¶ 29. Plaintiff seeks relief in the form of compensatory damages "to compensate for pain, suffering, and lost income," punitive damages, and costs. ECF No. 1 at 5, § IV.

The basis for this Court's jurisdiction over Plaintiff's lawsuit is diversity of citizenship pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of Maryland, while Consumer Legal Group and the Individual Defendants are citizens of New York. *See* ECF No. 1 at 3–4, § II.B.

## LEGAL ANALYSIS

The Court begins its review of the Motions with a discussion of procedural issues relating to Defendants' Motion to Dismiss and Plaintiff's Cross-Motion for Summary Judgment (the "Cross-Motion"). ECF Nos. 24, 33.

### I. The Parties' Motions

Before analyzing Defendants' arguments regarding dismissal, the Court must first address two threshold issues. First, the Court must determine whether it may consider the materials Defendants have attached to their Motion to Dismiss without converting the motion to one for summary judgment. Second, the Court must consider how to construe and analyze Plaintiff's Cross-Motion, which responds to Defendants' arguments, introduces new facts, and raises claims not articulated in the Complaint. In resolving this latter issue, the Court must determine whether, and to what extent, it should apply Rule 56 of the Federal Rules of Civil Procedure to the analysis. The Court addresses each issue in turn.

#### A. Defendants' Motion to Dismiss

Defendants have moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which permits a defendant to move for dismissal of a complaint on the ground that the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of the complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). "To survive the motion, a complaint . . . must contain sufficient facts to state a claim that is 'plausible on its face.'" *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The pleading standard under Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that provides only "'labels and conclusions'" or "a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Nor will the Court accept unsupported legal allegations, "legal conclusions couched as factual allegations," or "conclusory factual allegations devoid of any reference to actual events." *Schwenke v. Ass'n of Writers & Writing Programs*, 510 F. Supp. 3d 331, 334 (D. Md. 2021). The complaint of a *pro se* plaintiff is to be "liberally construed" and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation modified).

When deciding a motion to dismiss, the court accepts as true all factual allegations contained in the complaint. *E.I. du Pont de Nemours and Co.*, 637 F.3d at 440. The court's inquiry is generally limited to the four corners of the complaint and documents attached to or incorporated into the complaint. *Id.* at 448. The court may consider documents attached to a motion to dismiss "only when a document is 'integral to and explicitly relied on in the complaint,' and when 'the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (citation modified).

Defendants attach two exhibits to their Motion to Dismiss: (1) the Services Agreement between Consumer Legal Group and Plaintiff, signed by Plaintiff on June 7, 2023, and (2) the Services Agreement between Consumer Legal Group and Plaintiff, signed by Plaintiff on October 10, 2023.[5] Both agreements, while not attached to Plaintiff's Complaint, are integral to the

[5] Both exhibits are supported by a Declaration of Jack Gross, the managing attorney of Consumer Legal Group, attesting to the truth and accuracy of the documents. *See* ECF No. 24-2.

allegations therein. Plaintiff's Complaint centers on the debt consolidation services that Consumer Legal Group contracted with Plaintiff to provide. Indeed, the focus of Plaintiff's breach of contract claim are the two contracts Defendants attach to their Motion to Dismiss, and Plaintiff does not challenge the authenticity of either contract. The Court will therefore consider the contracts in connection with the review of Defendants' Motion to Dismiss.

**B. Plaintiff's Cross-Motion for Summary Judgment**

Turning to Plaintiff's response to the Motion to Dismiss, Plaintiff did not file a strict response in opposition. Rather, Plaintiff filed a memorandum styled as a "Cross-Motion for Summary Judgment in Opposition to Defendants' Motion to Dismiss."[6] *See* ECF No. 33-1. Plaintiff recites both the motion to dismiss standard under Rule 12(b)(6) and the summary judgment standard under Rule 56. *See* ECF No. 33-1 at 8–9.[7] It appears that Plaintiff seeks to accomplish two goals with the memorandum—oppose Defendants' arguments regarding dismissal of her claims and supplement her Complaint with different legal theories, claims, and evidence. *See* ECF No. 37-1 at 1–2. While Plaintiff may respond to and rebut Defendants' arguments, Plaintiff cannot amend her Complaint with additional factual allegations and legal claims through memoranda of law. Moreover, resolving the parties' disputes via the summary judgment standard at this early stage—before entry of a scheduling order and the commencement of discovery—is premature.

[6] Plaintiff's reference to a "cross-motion" for summary judgment is a misnomer because Defendants did not file a motion for summary judgment against Plaintiff.

[7] Throughout this Opinion, citations to the parties' filings refer to the page number provided in the CM/ECF filing header, not the PDF pagination.

**1. Summary judgment is premature at this stage.**

Plaintiff asks this Court to apply the summary judgment standard to her claims and consider the materials she has attached to her briefing. As noted above, the Court may not consider extrinsic evidence when reviewing a motion to dismiss, unless such evidence is attached to, or referenced in the Complaint. However, when reviewing a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court considers materials cited from the record, including documents, written discovery, and other evidence, to determine whether the moving party has established that "there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). "The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

Summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448. Courts routinely deny such motions filed at an early stage as premature. *See Consumer Fin. Prot. Bureau v. Access Funding, LLC,* Civil Action No. ELH-16-3759, 2018 WL 11425879, at *2 (D. Md. June 5, 2018) (denying motion to dismiss, or in the alternative for summary judgment, as premature in part due to plaintiff's "lack of opportunity . . . to complete discovery"); *Kornegay v. United States*, 802 F. Supp. 3d 767, 792 (D. Md. 2025) (declining to convert motion to dismiss to motion for summary judgment because relevant facts were "vigorously disputed" and plaintiffs were precluded from taking any discovery until resolution of the motion to dismiss and entry of scheduling order).

Here, too, the early stage of this case precludes review of Plaintiff's Cross-Motion under the summary judgment standard. The Court has not issued a scheduling order, given the pending Motion to Dismiss, and by Local Rule, the parties are prohibited from engaging in any discovery

until a scheduling order is entered. *See* Loc. R. 104.4. As a result, Defendants have had no opportunity to obtain evidence to rebut Plaintiff's arguments—a disadvantage they highlight in attempting to respond to Plaintiff's deceptive practices act claim. *See* ECF No. 35 at 5 n.7. Taken together, the procedural posture of this case, and Defendants' own assertion that more discovery is necessary to respond to at least one of Plaintiff's claims, necessitates denial of Plaintiff's Cross-Motion as premature. The Court will therefore construe Plaintiff's Cross-Motion as an opposition to Defendants' Motion to Dismiss. It follows that the Court declines to consider all exhibits that Plaintiff has attached to her briefing in support of summary judgment and similarly declines to consider any exhibits Defendants have attached to their opposition to Plaintiff's Cross-Motion, leaving only the relevant contractual agreements between Plaintiff and Consumer Legal Group for review.

**2. Plaintiff cannot amend her Complaint through briefing on the pending Motions.**

Plaintiff may not amend her Complaint through a memorandum of law. *See Glover v. Loan Science, LLC*, Civil Action No. PWG-19-1180, 2020 WL 3960623, at *2 (D. Md. July 13, 2020) ("But briefs in opposition to a dispositive motion may not be used to amend a complaint or add new claims.") (citation modified). The memoranda in support of Plaintiff's Cross-Motion expressly state that she seeks redress for: (1) a claim pursuant to the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679; and (2) a claim for unfair or deceptive practices pursuant to the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law. § 13-301, and the Maryland Debt Settlement Services Act, Md. Code Ann., Fin. Inst. §§ 12-1014, 12-1016. *See* ECF Nos. 33-1 at 1; 37-1 at 5. A review of Plaintiff's Complaint demonstrates that she has failed to expressly plead any violation of CROA or Maryland law, including the MCPA and the Maryland Debt Settlement Services Act. *See generally* ECF No. 1.

Plaintiff contends that these claims are not new because they are "equivalent to" claims already alleged in her Complaint and for which the Defendants have received fair notice. ECF No. 37-1 at 5. The Complaint itself belies this argument as to the CROA and Maryland Debt Settlement Services Act claims. "'The CROA is a federal statute that functions as a subset of the Consumer Credit Protection Act and is designed to promote transparency in consumer credit transactions.'" *Heffner v. Homebody Ins. Agency,* LLC, Civil Action No. BAH-25-3634, 2026 WL 2018620, at *7 (D. Md. July 13, 2026) (citing *Arriola v.* Pardo, No. 1:14CV0745 JFA, 2015 WL 3404724, at * 4 (E.D. Va. May 26, 2015)). A "credit repair organization" is defined as "any person who uses any instrumentality of interstate commerce . . . to sell, provide, or perform . . . any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving any consumer's credit record, credit history, or credit rating." 15 U.S.C. § 1679a(3)(A)(i).

At no point in the Complaint does Plaintiff allege that any of the Defendants function as a credit repair agency within the meaning of the statute, or that Defendants violated the CROA by failing to successfully resolve Plaintiff's debts. Plaintiff mentions "credit score loss" only once in the Complaint in a brief description of her alleged damages. Even a generous reading of the Complaint does not provide fair notice of the CROA claim and the grounds upon which the claim rests. *Twombly*, 550 U.S. at 555. Plaintiff has not stated a CROA claim and her arguments regarding the claim are not properly before the Court.

Plaintiff's Complaint is also devoid of allegations equivalent to any claim under the Maryland Debt Settlement Services Act. The Act pertains to debt settlement services and providers of such services. Debt settlement services are defined as

> "any service or program represented, directly or by implication, to renegotiate, settle, reduce, or in any way alter the terms of payment or other terms of a debt

> between a consumer and one or more unsecured creditors or debt collectors, including a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor or debt collector."

Md. Code Ann., Fin. Ins. § 12-1001(d)(1). The Act requires a person who provides debt settlement services to register with the Commissioner of Financial Regulation, unless the individual is exempt from doing so. Md. Code Ann., Fin. Ins. §§ 12-1004(a). The Act also limits the amount of fees a registrant may charge for debt settlement services and the timing of such fees. Md. Code Ann., Fin. Ins. §§ 12-1010. The Act further prohibits registrants from misrepresenting any material aspect of the debt settlement service and sets requirements for debt settlement services agreements. Md. Code Ann., Fin. Ins. §§ 12-1010–12. A violation of the Debt Settlement Services Act is a *per se* violation of the MCPA and subject to the penalties under the MCPA. Md. Code Ann., Fin. Ins. § 12-1016.

Plaintiff has not specifically alleged that any of the Defendants are providers of debt settlement services, and even if the Court could reach this inference from the Complaint (it cannot), Plaintiff has not articulated any specific violation of the Debt Settlement Services Act. Plaintiff does not allege that Defendants were required to register as debt settlement services providers and failed to do so, nor does she allege that Defendants violated the Act by virtue of the fees Defendants charged, the contracts Defendants prepared, or the representations Defendants made regarding their services. Absent some focused allegations relating to a violation of the Debt Settlement Services Act, merely identifying her claim as a dual "Civil Fraud/Deceptive Practices Act" claim is not enough to put Defendants on fair notice of a claim arising under the Debt Settlement Services Act, notwithstanding the fact that a violation of the Act gives rise to a violation of the MCPA. As with the CROA claim, the Court will disregard Plaintiff's arguments regarding the Debt Settlement Services Act in its review of Defendants' Motion to Dismiss.

The Court reaches a different conclusion as to Plaintiff's MCPA claim, which prohibits unfair or deceptive trade practices. In light of the principles of liberal construction at work here, the Court concludes that Plaintiff's Complaint may be read to allege a violation of the MCPA. While Plaintiff's Complaint does not articulate a specific governing statute for the "Deceptive Practices Act" claim, she may have intended to invoke Maryland law. The civil cover sheet attached to the Complaint states "New York common law" as applying to the civil fraud claim, but only generically states "Deceptive Practices Act" as a separate cause of action. *See* ECF No. 1-1. Plaintiff's failure to cite the statute is not a reason to conclude that Defendants lack fair notice of the claim. "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Defendants are on notice that Plaintiff has generally alleged that Defendants have engaged in deceptive practices relating to their contractual agreements with Plaintiff, and the MCPA prohibits such practices. Accordingly, the Court will construe Plaintiff's "Civil Fraud/Deceptive Practices Act" claim as encompassing an alleged violation of the MCPA. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). The Court addresses the sufficiency of Plaintiff's allegations regarding this claim in Section VI, *infra*.

## II. Choice of Law

The next threshold issue presented by the Motion to Dismiss and Plaintiffs' Cross-Motion relates to whether New York or Maryland law applies to Plaintiff's breach of contract, civil fraud, and deceptive practices act claims. Defendants contend that New York law applies to all claims because the contracts at issue between Plaintiff and Consumer Legal Group expressly provide that New York law governs the agreements. ECF Nos. 24-1 at 6 n.4, 24-3 at 4, 24-4 at 6. Plaintiff does

not address this argument in her memoranda but, by arguing that her lawsuit encompasses claims under Maryland law, she at least implicitly suggests that the Court should apply Maryland law.

A federal court sitting in diversity applies federal procedural rules and the substantive rules of the forum State, including the forum State's choice of law rules. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013); *see also Higgins v. McDonald*, 826 F. Supp. 3d 640, 648 (D. Md. 2026). Because Maryland is the forum State, the Court applies Maryland's choice of law rules. "When a contract contains a choice of law provision, Maryland courts apply § 187(2) of the Restatement (Second) of Conflict of Laws (1971) ("Restatement"), which states: 'The law of the state chosen by the parties to govern their contractual rights will be applied.'" *Howard Bank v. Compu-Link Corp.*, 472 F. Supp. 3d 267, 273 (D. Md. 2020) (citation modified); *see also Cunningham v. Feinberg*, 441 Md. 310, 326 (2015) ("If the contract contains a choice of law provision, we apply generally the law of the specified jurisdiction."). There are two narrow exceptions to this rule under Maryland law. A choice of law provision will not apply if the "choice of law jurisdiction has no substantial relationship to the transaction, or there is a fundamental policy difference in the laws of another jurisdiction with a more substantial interest in the parties or the transaction." *Howard Bank*, 472 F. Supp. 3d at 273 (quoting *United States ex rel. Tusco, Inc. v. Clark Constr. Grp.*, 235 F. Supp. 3d 745, 752 n.9 (D. Md. 2016)). Neither Plaintiff nor Defendants contend that the exceptions apply here.

Both contracts contain a section titled "Applicable Law and Confidentiality" which provides that "[Consumer Legal Group] is based out of the State of New York, is a licensed law corporation under the State Bar of New York, and that *New York law applies to this Agreement*." ECF Nos. 24-3 at 4, 24-4 at 6 (emphasis added). In a separate paragraph regarding "Fee Dispute Resolution" the October 2023 Agreement also states that, "should there be a dispute regarding

fees, the law of New York shall apply in arbitration as well as civil litigation." ECF No. 24-4 at 6–7.

Given the express language of the contracts that New York law applies "to the Agreement," *i.e.* the parties' contract, Plaintiff's breach of contract claim against Defendants fits comfortably within the scope of the choice of law provision. However, Plaintiff's fraud and "Deceptive Practices Act" claims are not contract claims, so the Court must decide whether they are encompassed by the parties' choice of law provision. Notably, Plaintiff appears to agree with Defendants that New York law should govern her claim for civil fraud. While she does not directly address the choice of law question in her briefing, Plaintiff identifies "New York Common Law" as the basis for her fraud claim in the civil cover sheet accompanying the Complaint. *See* ECF No. 1-1. Plaintiff's affirmative selection of New York law as applicable to the fraud claim, coupled with her silence on the issue of whether New York or Maryland law should apply to this claim, supports application of New York law. Where the parties agree that a particular state's law governs their claims, the Court "need not inquire further into the choice-of-law questions." *See Vanderhoof-Forschner v. McSweegan*, 215 F.3d 1323, at *2 n.3 (4th Cir. 2000) (unpublished table decision). Moreover, as is explained further in this Opinion, Plaintiff's Complaint as currently pled establishes that the fraud claim is wholly duplicative of the breach of contract claim, which further supports application of New York law.

The closer question is whether the parties' choice of law provision extends to Plaintiff's "Deceptive Practices Act" claim, a statutory claim sounding in tort.[8] Unlike the fraud claim, the parties do not agree which State's law should govern. Plaintiff argues that her Complaint states a

[8] An alleged violation of the Maryland Consumer Protection Act "is in the nature of a tort action; it is a legal wrong that is not equivalent to a breach of contract." *Jones v. Koons Automotive, Inc.*, 2013 WL 3713845 (D. Md. July 15, 2013).

valid claim for a violation of the MCPA. She makes no argument whatsoever that New York's comparable statute should apply. The Court infers that Plaintiff believes that the parties' choice of law provision does not preclude application of Maryland law. Conversely, Defendants "assume that the choice-of-law provision applying generally to 'civil litigation' is sufficiently broad enough to encompass a related New York statutory claim." ECF No. 24-1 at 11.

The Court disagrees with Defendants and finds that the choice of law provision in the parties' Agreements is limited to contract claims. "Under Maryland law, courts look to the intent of the parties as reflected by the plain language of the contract to determine whether a choice of law provision applies to contract related tort claims." *Aegis Bus. Credit, LLC v. Brigade Holdings, Inc.*, Civil Action No. AAQ-21-0668, 2023 WL 5352407, at *3 (D. Md. Aug. 18, 2023).

The choice of law provisions in the parties' contracts are not as broad as Defendants contend. Defendants highlight the October 2023 Agreement's phrasing that New York law applies generally to "civil litigation" but they omit an important preceding clause: "should there be a dispute *regarding fees* . . ." which is contained in a separate paragraph relating to "Fee Dispute Resolution." ECF No. 24-4 at 7. This language, and its appearance in a paragraph focused entirely on fee disputes, demonstrates that the parties intended for New York law to apply to any civil litigation arising from disputes specifically regarding fees—not for New York law to apply generally to any civil litigation arising from the contracts. Indeed, the absence of language in the choice of law provisions that New York law applies to disputes "arising under the Agreement," or analogous wording to that effect, suggests that the provision applies only to contract claims and not to other causes of action. The Fourth Circuit and this Court have concluded the same. *See, e.g.*, *Felichko v. Schecter*, Civil Action No. RDB-18-1392, 2019 WL 1318109, at *9 (D. Md. Mar. 22, 2019) (concluding that choice of law provision applied only to the contract itself because "it does

not contain the broad 'arising out of or related to' language that would encapsulate contract-related tort claims"); *Bresler v. Wilmington Trust Co.*, 348 F. Supp. 3d 473, 488 n.10 (D. Md. 2018) (construing three choice of law provisions in parties' contracts as sufficiently broad to encompass contract-related tort claims); *Jones v. Koons Automotive, Inc.*, Civil Action No. DKC-09-3362, 2013 WL 3713845, at *6 (D. Md. July 15, 2013) (distinguishing parties' choice of law provision, which expressly stated that the chosen law "appl[ied] to this contract," from "expansive" provisions covering "any dispute connected herewith" and concluding that the former provision applied only to contract claims); *accord Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624, 628 (4th Cir. 1999) (concluding that choice of law provision stating that "this Agreement and the rights and obligations of the parties hereunder . . . including all matters of construction, validity, and performance" covered tort claims).

Because the choice of law provision does not dictate the application of New York law to Plaintiff's statutory tort claim, the Court must apply Maryland's *lex loci delicti* rule for tort actions to determine which State's law governs. *Doctor's Weight Loss Ctrs., Inc. v. Blackston*, 487 Md. 476, 492–93 (2024). "Under the doctrine, a court evaluates a party's tort liability according to the law of the place of wrong." *Id.* at 493. When the facts implicate more than one State, Maryland applies the substantive "law of the State where the injury—the last event required to constitute the tort—occurred." *Lab'y Corp of Am. v. Hood*, 395 Md. 608, 615 (2006); *see Dastranj v. Dehghan*, Civil Action No. PX-15-2436, 2017 WL 3531476, at *4 (D. Md. Aug. 17, 2017).

Plaintiff's Complaint provides no details regarding where the alleged events occurred. She does not allege where she was located when she was defrauded by Defendants, or where Defendants were located. She does not allege where she was when she suffered any injury, including any injuries stemming from the lack of legal representation in court proceedings, the

"loss of economic stability," "major credit score loss," the "judgment and liens on her property," or any other injury. ECF No. 1 ¶ 29. Defendants highlight this ambiguity as well, acknowledging in their briefing that Plaintiff's Complaint does not allege that she was in New York when she was allegedly deceived, defeating a claim for deceptive practices under New York law. *See* ECF No. 24-1 at 11–12. Given the fact-specific nature of the inquiry, and the absence of allegations in the Complaint in this regard, the Court cannot resolve the choice of law issue at this stage. The Court will therefore defer resolution of the issue until a later stage in the proceedings. *See Malinowski v. Lichter Grp., LLC*, Civil Action No. WDQ-14-917, 2015 WL 1129522, at *4 (D. Md. Mar. 11, 2015) (deferring choice of law analysis until after discovery). For purposes of resolving Defendants' Motion to Dismiss, the Court assumes without deciding that Maryland law applies.

## III. Count One - Breach of Contract

Defendants challenge the sufficiency of Plaintiff's breach of contract claim. Defendants argue that Plaintiff has failed to allege any breach of contract claim against the Individual Defendants, necessitating dismissal. ECF No. 24-1 at 6–7. I agree. Defendants do not challenge Plaintiff's breach of contract claim against Consumer Legal Group. *See* ECF No. 24-1 at 12. Even if they had, Plaintiff's Complaint plausibly alleges a claim for breach of contract under New York law against Consumer Legal Group.

To plead a breach of contract claim under New York law, the Plaintiff must allege: "(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022) (citation modified). Plaintiff's Complaint satisfies these elements. With respect to the first element, Plaintiff has alleged that she entered into two separate contractual agreements with Consumer Legal Group, whereby Consumer Legal Group agreed to

invalidate or resolve her debts, and if unsuccessful, would provide Plaintiff with a refund. ECF No. 1 ¶¶ 1–2. Plaintiff has also alleged that the contracts provided that Consumer Legal Group would represent Plaintiff in any lawsuit filed against Plaintiff regarding her enrolled debts. ECF No. 1 ¶¶ 5–6. With respect to the second element, Plaintiff has alleged that she performed under the contracts by paying the required fees to Consumer Legal Group from June 12, 2023, through May 30, 2025. ECF No. 1 ¶ 9. Regarding the third element, Plaintiff has alleged that Consumer Legal Group breached the contracts in myriad ways, including by "fail[ing] to provide [Plaintiff] with legal representation" ECF No. 1 ¶ 5, by collecting fees before the successful resolution of her debts, ECF No. 1 ¶ 8, and by "fail[ing] to provide debt invalidation services as specified in the contract." ECF No. 1 ¶ 9. Finally, Plaintiff has alleged that these failures have caused her harm, including "a major credit score loss," payment lapses on bills, and adverse judgments and liens on Plaintiff's property, among other financial harms. ECF No. 1 ¶ 29. Having satisfied all elements of a breach of contract claim under New York law as to Consumer Legal Group, this claim survives Defendants' Motion to Dismiss.

Plaintiff's breach of contract claim against the Individual Defendants, however, shall be dismissed. As an initial matter, Plaintiff alleges only that a contract existed between herself and Consumer Legal Group. *See generally* ECF No. 1. She does not include any specific allegations that the two contracts at issue involved the Individual Defendants, other than to state that Defendant Aryeh Weber's signature appeared on documents "submitted by CLG." ECF No. 1 ¶ 21. Defendants argue that these omissions are fatal to Plaintiff's breach of contract claim. The Court agrees.

Under New York law, "an agent executing a contract on behalf of a disclosed principal is not liable for a breach of the contract unless it clearly appears that he or she intended to bind

himself or herself personally." *166-20 Union Turnpike, LLC v. Tavak, LLC*, 243 N.Y.S.3d 101, 103 (2025) (citation modified). Evidence of the agent's intention must be "clear and explicit." *Id.* "A personal guaranty of a corporation's obligation will be enforced against an individual where it constitutes a deliberately stated, unambiguous, and separate expression personally obligating the individual under the contract." *Id.* at 104 (citation modified).

Given the absence of any allegation that either Jack Gross or Jason Rebhun entered into a contract with Plaintiff, or executed the contracts between Plaintiff and Consumer Legal Group on behalf of Consumer Legal Group, the breach of contract claim against these two individual defendants cannot be maintained. Nor can it be maintained as to Defendant Aryeh Weber. Plaintiff has not alleged that Defendant Weber executed the contract on his own behalf, or with the intention to bind himself to the agreement, and the Court cannot reach that inference from the Complaint. In fact, the Complaint and the two contracts between Plaintiff and Consumer Legal Group demonstrate that Defendant Weber acted in his capacity as an officer of Consumer Legal Group. Plaintiff has alleged that Defendant Weber was a "principal[]" of Consumer Legal Group, and documents submitted on behalf of Consumer Legal Group displayed his signature. ECF No. 1 ¶¶ 18, 21. In both contracts between Plaintiff and Consumer Legal Group, Defendant Weber's name and title as "Chairman" appear only in a block of text with contact information for Consumer Legal Group, including its mailing address, email address, and telephone number. *See* ECF Nos. 24-3 at 7, 24-4 at 9. Plaintiff's allegations do not support a breach of contract claim against any Individual Defendant.

In urging the Court to deny dismissal of the breach of contract claim, Plaintiff attempts to introduce information from bankruptcy proceedings relating to a third party. *See* ECF No. 33-1 at 14–16. Plaintiff highlights certain events in these proceedings relating to Consumer Legal Group,

including an order by the bankruptcy court that directed Consumer Legal Group's banks "to hold in trust all ACH funds on any client file." ECF Nos. 33-1 at 15, 37-1 at 7. Plaintiff notes that Consumer Legal Group attempted to vacate or modify the order because it caused Consumer Legal Group's banks to freeze its accounts, to the company's detriment. ECF No. 33-1 at 15. Plaintiff argues that this information bolsters her breach of contract claim because it demonstrates that Defendants "deceived Plaintiff into believing that she was paying for and receiving debt invalidation services" while admitting in a separate proceeding that Consumer Legal Group was unable to service its clients due to its frozen bank accounts. ECF Nos. 33-1 at 16, 37-1 at 9–10.[9] Plaintiff asks the Court to use information from the bankruptcy proceedings as evidence and to consider a separate "Final Consent Order" under the doctrine of nonmutual offensive collateral estoppel. ECF Nos. 33-1 at 9–10, 37-1 at 9. Because summary judgment is premature, the Court declines to consider the bankruptcy proceedings as evidence. The Court also finds that the doctrine of nonmutual offensive collateral estoppel is inapplicable to the Consent Order between Consumer Legal Group and the Idaho Department of Finance.

Offensive collateral estoppel relates to a plaintiff's attempt "to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 326 (4th Cir. 2004). District courts have "broad discretion to determine when it should be applied." *Id.* (quoting *Parklane Hosiery Co.*

---

[9] Defendants clarify the nature of the bankruptcy proceedings. *See* ECF No. 35-1 at 6–7. They explain that the bankruptcy proceedings were held in the U.S. Bankruptcy Court for the Central District of California and pertained to LPG, from whom Consumer Legal Group purchased some accounts. In a June 23, 2023 Order, the Bankruptcy Court directed Consumer Legal Group from interfering with the funds associated with the purchased accounts and to hold funds from those accounts in a trust. ECF No. 35-1 at 7. Significantly, Defendants represent that Plaintiff's file was not among those purchased from LPG and is not implicated by the bankruptcy proceedings. ECF No. 35-1 at 7.

*v. Shore*, 439 U.S. 322, 331 (1979)). A party asserting nonmutual offensive collateral estoppel must establish five elements:

> (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Price v. Atlantic Ro-Ro Carriers, Inc.*, 262 F. Supp. 3d 289, 293 (D. Md. 2017) (citation omitted).

Plaintiff fails to establish the first element because the issues for which she seeks preclusion are not identical to the issues raised in the Consent Order. Plaintiff contends that the Consent Order in Idaho establishes in this case that Defendants are not properly licensed and provided debt invalidation services while their accounts were frozen. ECF No. 37-1 at 12. But, as Plaintiff's own briefing states, the Consent Order related to a determination that "Consumer Legal Group was engaging in debt counseling, credit counseling, or credit repair activities that required licensure" in Idaho. ECF No. 37-1 at 12. The Consent Order prohibited Consumer Legal Group from taking on any new clients in Idaho without first obtaining such a license. ECF No. 37-1 at 12. Whether Consumer Legal Group provided debt invalidation services in Idaho without the proper license has no bearing on Plaintiff's claims in this lawsuit that Consumer Legal Group and the Individual Defendants failed to provide debt invalidation services to Plaintiff. Plaintiff's estoppel argument does not advance her breach of contract claim. Plaintiff's breach of contract claim is dismissed as to the Individual Defendants.

## IV. Count Two – Federal Trade Commission Act

Plaintiffs "FTC Violation" claim is also dismissed because the Federal Trade Commission Act does not provide Plaintiff with a private right of action. *See Glover v. Loan Science, LLC*, Civil Action No. PWG-19-1880, 2020 WL 3960623, at *3 (D. Md. July 13, 2020). In other words, the

Act does not allow private individuals, like Plaintiff, to sue parties who Plaintiff believes have violated the Act. *See Quality Inns Intern., Inc. v. Patel*, 1988 WL 62882, at *3 (D. Md. June 9, 1988) ("Nowhere does this Act purport to confer a right of action to enjoin the practices prohibited by this Act or to obtain damages following the commission of such acts."). Accordingly, this claim is dismissed with prejudice as to all Defendants.

**V. Count Three - Civil Fraud**

To state a claim for fraud under New York law, the Plaintiff must allege "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996). The Federal Rules of Civil Procedure require a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, the plaintiff must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (citation modified). This heightened pleading standard applies to both self-represented and represented parties. *See id.*

A fraud claim that mirrors a breach of contract may be dismissed as duplicative if the only difference between the claims is that the plaintiff has alleged fraud on the ground that the "adversary made a promise while harboring the concealed intent not to perform it." *Cronos Group Ltd. v. XComIP, LLC*, 64 NY.S.3d 180, 186 (2017). "[A] fraud claim that arises from the same facts as an accompanying contract claim, seeks identical damages and does not allege a breach of any duty collateral to or independent of the parties' agreements is subject to dismissal as redundant of

the contract claim." *Id.* (citation modified). However, a fraud claim may proceed "when a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, even though the same circumstances also give rise to the plaintiff's breach of contract claim." *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 928 N.Y.S.2d 229, 233 (2011). "In the context of a contract case, the pleadings must allege misrepresentations of present fact, not merely misrepresentations of future intent to perform under the contract, in order to present a viable claim that is not duplicative of a breach of contract claim." *Wyle Inc. v. ITT Corp.*, 13 N.Y.S.3d 375, 376 (2015).

Reviewing the allegations in Plaintiff's Complaint in the light most favorable to her, the fraud claim against Consumer Legal Group and the Individual Defendants fails for three reasons. First, the fraud claim fails to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. Plaintiff does not allege fraud with particularity. She alleges only in general terms that Consumer Legal Group and Aryeh Weber defrauded her by leading her to believe that she would receive favorable debt resolution services, but she does not allege when or where the false statements were made, or the content of the statements.

Second, and relatedly, Plaintiff's allegations of fraud against Consumer Legal Group and Aryeh Weber appear duplicative of her breach of contract claim. Plaintiff's allegations are precisely the type that New York courts have found to be impermissibly redundant. Plaintiff does not allege any misrepresentations of present facts that were collateral to the contracts and which induced her to enter into the contracts. *See id.* at 376. She generally alleges that Consumer Legal Group and Defendant Weber promised Plaintiff favorable debt resolution services on the 14 accounts that Plaintiff enrolled, but that Defendants failed to perform because none of the accounts were ultimately invalidated. *See* ECF No. 1 ¶ 27. And Plaintiff makes no distinction in the damages

sought for any of her claims. Plaintiff's fraud claim is therefore akin to an allegation of Defendants' "unkept promise to perform certain of its preexisting obligations under the parties' contract." *Cronos Group Ltd.*, 64 N.Y.S.3d at 187.

Finally, Plaintiff fails to satisfy the first element of a fraud claim as to Defendants Gross and Rebhun. In other words, she has failed to allege that either Defendant made any misrepresentation or material omission of fact known to be false. Plaintiff's allegation that Mr. Gross and Mr. Rebhun "intentionally failed to provide [Plaintiff] a refund" does not suffice. ECF No. 1. ¶ 15. Likewise, Plaintiff's allegation that she spoke with Defendant Gross and he "made excuses why attorney representation was not needed and will not be provided" cannot be construed as an allegation of misrepresentation or omission of fact known to be false. ECF No. 1 ¶ 5.

For the reasons explained in Section III, *supra*, the Court will not consider evidence from the bankruptcy proceedings involving LPG, nor will it apply the doctrine of nonmutual offensive collateral estoppel to the Consent Order. Plaintiff's fraud claim against all Defendants will be dismissed.

## VI. Plaintiff's "Deceptive Practices Act" Claim[10]

To state a MCPA claim, the Plaintiff must allege "'(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury.'" *Bryant v. Koppers,*

[10] As discussed in Section II, the Court will defer resolution of the choice of law issue regarding this claim and assumes, without deciding, that Maryland law applies. While the analysis herein relates to Maryland law, the MCPA shares similarities with New York's Consumer Protection Act. New York's law prohibits "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). To state a prima facie case, the Plaintiff must allege "that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002). "[T]o qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." *Id.*

*Inc.*, 627 F. Supp. 3d 466, 477 (D. Md. 2022) (quoting *Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 710 (D. Md. 2020)). "A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Id.* (quoting *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013)). Where the gravamen of the plaintiff's MCPA claim is fraud, the Court reviews the claim under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Id.* at 478. An MCPA claim replicates common law fraud if the claim is made pursuant to Section 13-301(9) of the statute, which defines an unfair or deceptive trade practice as "Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods, consumer realty, or consumer service." Md. Code Ann., Com. Law § 13-301(9)(i).

The heightened pleading standard does not apply if the unfair or deceptive trade practice is defined under other provisions of the statute. *See McCormick v. Medtronic, Inc.*, 219 Md. App. 485, 493 (2014). "For example, an 'unfair or deceptive trade practice may include a 'false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers' . . . or the failure to state a material fact if the failure deceives or tends to deceive.'" *Id.* 493–94 (quoting Md. Code Ann., Com. Law. § 13-301(1), (3)).

As Plaintiff did not expressly plead a violation of the MCPA in her Complaint, there is no allegation that identifies the specific unfair or deceptive trade practice under the statute that Defendants allegedly committed. Plaintiff's briefing offers no clarity in this regard. Some of the allegations in Plaintiff's Complaint are akin to those replicating fraud. She alleges at various points

that Consumer Legal Group and/or Aryeh Weber "defrauded" her into believing she would receive favorable debt resolution services, ECF No. 1 ¶ 27, and "misrepresented debt validation services and made fraudulent contracts." ECF No. 1 ¶ 29. Elsewhere, though, Plaintiff alleges that "CLG solicited Ms. Shackelford as a customer knowing that the services as advertised (debt invalidation) were not attainable," which could be construed as an unfair or deceptive trade practice that is not akin to fraud. ECF No. 1 ¶ 23. Plaintiff, as a *pro se* litigant and the non-moving party, is entitled to the less stringent construction. Therefore, the Court declines to apply the heightened pleading standard.

Plaintiff has satisfied Federal Rule of Civil Procedure 8(a)'s pleading standards to allege a claim for violation of the MCPA as to Consumer Legal Group. Resolving inferences in Plaintiff's favor, she has plausibly alleged that Consumer Legal Group solicited her as a customer and misrepresented its debt resolution services, leading her to believe that it could favorably resolve her debts. ECF No. 1 ¶¶ 1–9. Plaintiff enrolled her debts with Consumer Legal Group and paid it fees for debt resolution services over nearly two years during which time Plaintiff was sued multiple times by creditors. ECF No. 1 ¶¶ 1–9. Plaintiff's debts were not resolved and ultimately Consumer Legal Group denied Plaintiff a refund. ECF No. 1 ¶¶ 1–9, 15. As a result, Plaintiff sustained injuries including reduced income earnings, loss of economic stability, damage to her credit score, adverse judgments and liens on her property, and delinquencies on bills. ECF No. 1 ¶ 29. These allegations constitute cognizable injuries and losses under the MCPA. *See Lloyd v. General Motors Corp.*, 397 Md. 108, 143 (2007).

However, Plaintiff's allegations do not rise above the level of speculation as to the Individual Defendants. The allegation that Defendant Weber "defrauded" Plaintiff into believing that she would receive favorable debt solution services is not enough to nudge Plaintiff's MCPA

claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Similarly, Plaintiff's allegations as to Defendants Gross's and Rebhun's conduct do not fall within the ambit of any prohibited conduct under the MCPA. Plaintiff's MCPA claim against the Individual Defendants is therefore dismissed.

**VII. Plaintiff's Alleged Damages**

Defendants argue that Plaintiff's Complaint should be dismissed because Plaintiff has not pled recoverable damages as to the breach of contract claim—the lone claim that, in Defendants' view, Plaintiff adequately pled. ECF No. 24-1 at 12–13. Defendants contend that the absence of recoverable damages for this claim warrants dismissal of the Complaint. Because the Court finds that Plaintiff has alleged a valid breach of contract claim and a violation of the MCPA against Consumer Legal Group, some of the damages that Plaintiff seeks are recoverable, but the Court first begins with an examination of the damages for which Plaintiff has not alleged a plausible right to relief.

Plaintiff's Complaint does not contain allegations sufficient to support punitive damages on the breach of contract claim and such damages are not available under the MCPA. *See Frazier v. Castle Ford*, Ltd., 430 Md. 144, 161 n.20 (2013) (stating that "[p]unitive damages are not available in a private cause of action under the Consumer Protection Act"). "Punitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights." *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613 (1994). Punitive damages may be available where the claim for breach of contract also includes "egregious tortious conduct" like "fraud evincing a 'high degree of moral turpitude'" and "such conduct was part of a pattern of similar conduct directed at the public generally." *Id.* at 943–44 (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 405 (1961)). Plaintiff's fraud allegations do not support

punitive damages, as they largely replicate the breach of contract claim, and while Plaintiff alleges a network of businesses operating as alter egos of Tony Diab and LPG, those allegations do not establish any pattern of misconduct directed to the public. Therefore, Plaintiff cannot recover punitive damages.

Plaintiff has also failed to allege emotional distress damages with respect to the breach of contract and MCPA claims. New York courts adhere to "the long-standing rule that damages for emotional distress for breach of contract are available only in certain limited circumstances, such as a willful breach accompanied by egregious and abusive behavior." *Brown v. Government Employees Insurance Company*, 66 N.Y.S.3d 733, 736 (2017). Plaintiff's MCPA claim entitles her to damages for emotional injury but only when accompanied by a physical injury. *Wheeling v. Selene Fin. LP*, 473 Md. 356, 399 (2021). The Maryland Supreme Court has explained that "in order to recover damages for emotional injury, they must be accompanied by a physical injury, which the plaintiff will be required to prove by some objective physical manifestation." *Id.* For pleading purposes, a plaintiff must allege emotional damages along with a physical manifestation. *Id.* Plaintiff alleges that she experienced "pain and suffering" as the result of Defendant's conduct, but she has not alleged any special circumstances warranting damages for emotional distress for breach of contract and has not included any allegations of physical manifestations relating to her alleged pain and suffering. ECF No. 1 at 5 § IV, 12 ¶ 24. Accordingly, the Complaint fails to allege emotional damages.

While punitive and emotional distress damages are out of reach, Plaintiff is entitled to other damages on her claims. Plaintiff's breach of contract claim generally limits her recovery to "general damages which are the natural and probable consequence of the breach." *Kenford Co., Inc. v. County of Erie*, 537 N.E.2d 176, 178 (N.Y. Ct. App. 1989). A plaintiff may also obtain

consequential damages arising from the breach of contract but such damages "must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." *Id.* The Court need not determine at this time whether Plaintiff can prove her damages, only whether she has plausibly alleged damages.

Plaintiff has alleged financial harm in myriad ways, including "reduced income earnings," "loss of economic stability," adverse judgments and liens on her property, and other financial-related harm. Defendants focus only on Plaintiff's allegations of lost income and reduced earnings to conclude that Plaintiff has not alleged any damages representing a natural and probable consequence of the alleged breach. ECF No. 24-1 at 13–14. At the motion to dismiss stage, it is inappropriate for the Court to determine whether, and to what extent, the damages alleged are the natural and probable cause of the breach. That matter is best resolved on a complete record after the conclusion of discovery. Moreover, Plaintiff's MCPA claim entitles Plaintiff to recover damages "sustained. . . as a result of" the Defendants' unfair or deceptive trade practices. Md. Code Ann. Com. Law § 13-408(a). Consistent with this requirement, a plaintiff alleging a violation of the MCPA must establish an actual injury or loss. For the reasons stated above, *see supra* Section VI, Plaintiff has done so here.

## VIII. Plaintiff's Other Motions

Having resolved the issues presented in Defendants' Motion to Dismiss and Plaintiff's Cross-Motion, the Court now turns to the remaining four unresolved motions.

### A. Motion for Judicial Notice

Plaintiff asks this Court to take judicial notice of filings or orders in two unrelated proceedings: (1) a Chapter 11 complaint filed in the United States Bankruptcy Court for the Central District of California, relating to bankruptcy proceedings of The Litigation Practice Group, P.C.;

(2) a December 23, 2024 motion filed by Consumer Legal Group in connection with the bankruptcy proceedings in the Central District of California involving The Litigation Practice Group; (3) a Declaration of Richard A. Marshack, the trustee for The Litigation Practice Group, in connection with bankruptcy proceedings in the Central District of California; and (4) a Consent Order between Consumer Legal Group and the Idaho Department of Finance. Defendants oppose Plaintiff's Motion. *See* ECF No. 36.

A district court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The taking of judicial notice has significant downstream consequences. In a civil case, the court "must instruct the jury to accept the noticed fact as conclusive." Fed. R. Evid. 201(f). For this reason, "a tradition of circumspection surrounds judicial notice of adjudicative facts, and courts should exercise caution in taking judicial notice, doing so only when the matter is beyond reasonable controversy." *Hameed v. Maryland State Board of Physicians*, Civil Action No. BAH-25-1606, 2026 WL 251233, at *7 (D. Md. Jan. 30, 2026) (citation modified). While a court may take judicial notice of a document filed in another court for the purpose of "establish[ing] the fact of such litigation and related filings," the court "should not take judicial notice of any specific factual finding, legal reasoning, or legal conclusion from another case, as it would be inappropriate under Federal Rule of Evidence 201(b)." *Corbitt v. Baltimore City Police Dep't.*, 675 F. Supp. 3d 578, 586–87 (D. Md. 2023) (citation modified).

The Court will not consider any evidence Plaintiff attempts to establish through these filings, given that summary judgment is premature and the Court has narrowed its focus to Plaintiff's Complaint and the documents integral to the Complaint—the two contracts between

Plaintiff and Consumer Legal Group. The Consent Order in Idaho, which the parties jointly acknowledge relates to Consumer Legal Group's requirement to obtain a license to perform services in that State, is irrelevant to Plaintiff's claims in this litigation. Judicial notice of the filings is also inappropriate for another reason—Plaintiff asks this Court to take judicial notice of far more than the mere fact of the filings and the proceedings from which they derive. She asks the Court to find that "the vary [sic] allegations Plaintiff is accusing Defendants of has been decided in the extensive Bankruptcy adversary proceedings" and that the Consent Order establishes the "more extensive relationship" between LPG and Consumer Legal Group. ECF No. 34. Defendants dispute Plaintiff's allegations in this case, including Plaintiff's description of the relationship between LPG and Consumer Legal Group. The Court will exercise its discretion and decline Plaintiff's invitation to take judicial notice of the filings in the bankruptcy proceedings and Consent Order. Plaintiff's Motion is denied.

### B. Notice of Supplemental Authority and Correction of Record, Motion for Rule 11 Sanctions, and Request for Expedited Hearing

Plaintiff's three remaining filings are related and will be addressed together. In Plaintiff's Notice of Supplemental Authority and Correction of Record, she attempts to correct an alleged misstatement of law in a declaration attached to Defendants' Opposition to Plaintiff's Cross-Motion for Summary Judgment. ECF No. 39. After the filing of Plaintiff's Notice, Plaintiff moved for sanctions against Defendants pursuant to Federal Rule of Civil Procedure 11(c), arguing that the misstatement in the Declaration constitutes a false factual contention, in violation of Federal Rule of Civil Procedure 11(b)(3). Plaintiff's Emergency Motion for Expedited Hearing and Ruling on Motion for Rule 11 Sanctions urges the Court to move swiftly in its consideration of sanctions, given separate proceedings involving Consumer Legal Group and the New York Attorney General.

ECF No. 45. A brief summary of the factual background relating to these filings is necessary for context.

Plaintiff contends that the Declaration of Jack Gross, attached as an exhibit in opposition to Plaintiff's Cross-Motion, contained a false statement that Defendants failed to correct. Plaintiff notes that paragraph 5 of the Declaration states that one of the accounts that Plaintiff enrolled with Consumer Legal Group "resulted in dismissal with prejudice of a lawsuit to collect the debt." ECF No. 35-2 ¶ 5. The Declaration did not identify the specific case or account that resulted in the dismissal with prejudice. After Plaintiff received Defendants' filing, she states that on May 8, 2026, she notified Defendants that the statement was false, to which Defendants responded on May 22 by providing Plaintiff the case number and stating that the matter that was "dismissed." ECF No. 42-5. On May 26, Plaintiff then filed a Notice of Supplemental Authority and Correction of Record to address the alleged false statement in the Declaration. *See* ECF No. 39. Defendants opposed the Notice. ECF No. 40. Plaintiff seeks sanctions, including an order striking Defendants' Declaration and Opposition to Plaintiff's Cross-Motion, and awarding Plaintiff costs in connection with the filing of the sanctions motions.

Rule 11(b)(3) of the Federal Rules of Civil Procedure provides that when an attorney or unrepresented party presents a motion or other filing to the Court, "whether by signing, filing, submitting, or later advocating it" the attorney or party certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). "Factual allegations fail to satisfy Rule 11(b)(3) when they are unsupported by *any* information obtained prior to filing." *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) (citation modified).

A party moving for sanctions must file a separate motion that describes the offending conduct. Fed. R. Civ. P. 11(c)(2). The moving party must then serve the motion consistent with Rule 5 of the Federal Rules of Civil Procedure and wait 21 days to allow the other party an opportunity to withdraw or correct the challenged paper, claim, defense, contention, or denial. Fed. R. Civ. P. 11(c)(2).

The parties dispute whether the Declaration contains a false statement and whether Plaintiff followed the appropriate procedure governing sanctions motions in the first instance. The Court need not wade into this dispute because the Declaration that contains the alleged false statement is outside the scope of materials necessary to resolve Defendants' Motion to Dismiss. Defendants attached the Declaration in their Opposition to Plaintiff's Cross-Motion. Having concluded that summary judgment is premature, and declining to consider Plaintiff's arguments under the Rule 56 framework, any factual dispute about the disposition of Plaintiff's debts with Consumer Legal Group is immaterial at this stage. The Court simply has not considered the Declaration in its analysis of the sufficiency of Plaintiff's claims.

Even if the Court were to consider the factual averments in the Declaration, sanctions would be inappropriate because it does not appear that the statement in the Declaration was unsupported by *any* information. In another declaration from Jack Gross, submitted as an exhibit to Defendants' Opposition to Plaintiff's Notice, Mr. Gross explains that a representative from Consumer Legal Group contacted the Baltimore County District Court regarding the case against Plaintiff and learned that after the court denied the plaintiff's motion to vacate the dismissal, the plaintiff could not file the lawsuit again. ECF No. 40-2 ¶ 3. Consumer Legal Group recorded this disposition in its records as a dismissal with prejudice. *Id.* ¶ 4. Plaintiff disputes the accuracy of this disposition, but the disagreement is trivial and of no consequence to the present issues.

"Sanctions are not intended to 'penalize legitimate advocacy or good-faith disagreements about the factual record or the law.'" *Kennedy v. NYX Ent., Inc.*, Civil Action No. AAQ-25-2035, 2025 WL 3017226, at *7 (D. Md. Oct. 28, 2025) (quoting *Keene v. Comcast Cable Commc'ns Mgmt., LLC*, Civil Action No. MJM-24-3040, 2025 WL 2306233, at *7 (D. Md. Aug. 11, 2025)). Accordingly, Plaintiff's Motion for Sanctions is denied. Plaintiff's request for an expedited hearing on the Motion for Sanctions is denied as moot.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED IN PART. Plaintiff's Cross-Motion for Summary Judgment is DENIED as premature. Plaintiff's Motion for Judicial Notice is DENIED. Plaintiff's Notice of Supplemental Authority and Correction of Record, to the extent it seeks any relief, is DENIED. Plaintiff's Motion for Sanctions is DENIED. Plaintiff's Emergency Motion for Expedited Hearing and Ruling on Motion for Rule 11 Sanctions is DENIED AS MOOT.

A separate Order consistent with this Opinion follows.

Dated: October 28, 2026

/s/
Chelsea J. Crawford
United States Magistrate Judge